IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JEFFREY O'NEAL and
SHERRIE O'NEAL,

                    Plaintiffs,

v.                                           CIVIL ACTION NO.   5:16-cv-08597

RICHARD WISEN and
G. RUSSELL ROLLYSON, JR.,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Plaintiffs' Motion for Partial Summary Judgment Upon Plaintiffs' First Claim for Relief* (Document 32) and *Memorandum in Support* (Document 33), and *Defendant G. Russell Rollyson, Jr.'s Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment Upon Plaintiffs' First Claim for Relief* (Document 42). The Court has also reviewed *Defendant G. Russell Rollyson, Jr.'s Motion for Summary Judgment* (Document 35) and *Memorandum of Law in Support* (Document 36), the *Plaintiffs' Memorandum in Opposition to Defendant Rollyson's Motion for Summary Judgment* (Document 41), and *Defendant G. Russell Rollyson, Jr.'s Reply to Plaintiffs' Memorandum in Opposition to Defendant Rollyson's Motion for Summary Judgment* (Document 44). In addition, the Court has reviewed *Defendant Richard Wisen's Motion for Summary Judgment* (Document 39) and the *Memorandum in Support of Defendant Wisen's Motion for Summary Judgment and Motion to Extend Time for Motion for Leave to Add Third-Party, Jennifer Reynolds, Daughter of Plaintiffs, Jeffrey O'Neal and Sherrie*

*O'Neal* (Document 40). For the reasons stated herein, the Court finds that the Plaintiffs' motion for summary judgment should be granted, and the Defendants' motions should be denied.

**FACTUAL BACKGROUND**

The Plaintiffs, Jeffrey and Sherrie O'Neal, were the owners of record of a home and property in Skelton, Raleigh County, West Virginia (the Property). They initiated this action on September 6, 2016, and named as Defendants Richard Wisen, and G. Russell Rollyson, Jr., both individually and in his official capacity as the Deputy Commisioner of Delinquent and Nonentered Lands of Raleigh County, West Virginia. The O'Neals have lived apart since approximately 2001, and have not resided in the Property since the late 1990s. In 2002, they entered into an unwritten agreement with their daughter, Jennifer Reynolds, that she and her children could live in the home, and she could have the Property if she made the remaining five years of mortgage payments and paid the property taxes. She did so, and, although Jeffrey and Sherrie O'Neal remain on the deed, and Mr. O'Neal indicated that he retains some rights and responsibilities with respect to the Property, they consider Ms. Reynolds the owner of the Property. When Ms. Reynolds took possession of the Property, she began using the same post office box her parents had used in Skelton, West Virginia. Tax notices, addressed to Jeffrey and Sherrie O'Neal, continued to be sent to the Skelton post office box.[1] Tax records reveal that the Property was redeemed from delinquent status on multiple occasions prior to 2012, and Mr. O'Neal stated that, on previous occasions, he had seen the Property listed as delinquent in the newspaper, informed his daughter, and she had taken care of it.

---

1 Although the home has a street address, neither the O'Neals nor Ms. Reynolds put up a mailbox or received mail at the Property.

The 2012 taxes were not paid, and the Property was listed as delinquent in the newspaper. The first newspaper notice identifies delinquent properties. A second notice identifies delinquent properties and provides a date at which such properties will be sold by the Sheriff. Mr. O'Neal stated that his brother-in law notified him that the Property was listed as delinquent in the newspaper at some point, and he told Ms. Reynolds, but did not follow up with her or take any other steps to ensure the taxes were paid. On October 17, 2013, someone signed for a letter, sent by certified mail to the Skelton post office box in connection with the unpaid taxes. Neither of the Plaintiffs believe they either signed for the letter or received it. The O'Neal's Property did not sell at the local Sheriff's sale. It was, therefore, held for eighteen (18) months. During that eighteen-month period, Ms. Reynolds communicated with the Auditor's office regarding redemption. She received a statement of the taxes due via email, and a second statement some months later by mail to the Skelton post office box. The Property was not redeemed during the eighteen (18) months, and was certified to the Deputy Commissioner, Mr. Rollyson, for a second sale orchestrated by Mr. Rollyson's office. Prior to the second sale, the property was advertised three (3) times in the Beckley Register-Herald.

Mr. Wisen purchased the Property at the second sale for $400. At that time, he was provided with a form letter briefly describing the steps to notify the record owners of their right to redeem the property, and ultimately receive a deed if the owners failed to redeem. Although the letter advises purchasers to retain an attorney to conduct a title search and provide guidance on the notice process, Mr. Wisen identified the O'Neals and their addresses on his own. He completed a form, supplied by Mr. Rollyson's office, listing Jeffrey and Sherrie O'Neal as the record owners, with the Skelton post office box as the address. He opted to have the required notice sent to the

post office box via regular and certified mail, with letters addressed to Jeffrey O'Neal and Sherrie O'Neal. The notice listed a total amount payable to the Sheriff of Raleigh County of $1353.65 to redeem the property or that Mr. Wisen would receive a deed on or after November 12, 2015. The postal service returned each notice as undeliverable and/or unclaimed. Mr. Wisen stated that he was not informed that the notices that were returned were not sufficient under the law. Neither Mr. Wisen nor Mr. Rollyson attempted any other form of notice after the sale until after Mr. Wisen received the deed.

Mr. Wisen indicated that he believed the property was unoccupied based on a drive-by observation. However, after he obtained the deed, he had an eviction notice served to the Property and posted on the door and also had a title search conducted when he learned that someone was living in the house and that there was a tax lien on the Property. Mr. Wisen and Mr. O'Neal had some conversations in an attempt to resolve the situation, but Mr. Wisen ultimately sought eviction through a suit in state court, and the O'Neals brought this action. The Plaintiffs seek relief for deprivation of their property under color of state law without due process, in violation of 42 U.S.C. § 1983. In addition, they allege violations of W.Va. Code §11A-3-54 and § 11A-3-55. They seek declaratory and injunctive relief, voiding the tax deed of December 8, 2015, as well as actual damages, costs, attorney fees, and punitive damages from the Defendants in their individual capacities, for the violations. In addition, they assert that they are "entitled to an order setting aside the December 8, 2015 tax deed issued by defendant Rollyson to defendant Wisen, pursuant to West Virginia Code §11A-4-4(a)" because the Defendants did not comply with statutory and constitutional procedure for obtaining the tax deed. (Compl. at ¶ 52.)

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at

*3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review. *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd,* 474 F. App'x 101 (4th Cir. 2012). Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

**DISCUSSION**

The Plaintiffs argue that they are entitled to summary judgment with respect to their claim that the Defendants acted jointly to deprive them of their Property, under color of state law, without due process. They assert that the Defendants were required to send a notice addressed to "Occupant," in addition to those addressed to the O'Neals, and should have taken additional steps to provide notice after the notices were returned to Mr. Rollyson as undeliverable and/or unclaimed. The Plaintiffs note that, although state law requires a purchaser of a delinquent tax lien to perform the title search, Mr. Rollyson is responsible for serving notice on the individuals identified by that title search. Further, they emphasize that Mr. Rollyson, under color of state law, "personally extinguishes the prior owner's property rights" by issuing a tax deed. (Document 41 at 5.) The Plaintiffs argue that their claims for injunctive relief against Mr. Rollyson in his official capacity should be permitted to proceed in order to halt his practice of issuing tax deeds despite knowing that service of notice to redeem was unsuccessful.

Mr. Rollyson argues that the applicable statute does not permit recovery of monetary damages, that West Virginia law places the duty to provide notice on the tax lien purchaser, that the methods of notice attempted were legally sufficient, and that he is entitled to qualified immunity. He emphasizes that placing additional burdens on his office would interfere with the goals of obtaining money from tax sales and returning the properties to the tax rolls. Mr. Rollyson further contends that the Plaintiffs have not been deprived of the Property because they consider it their daughter's property, rather than their own. Finally, Mr. Rollyson argues that Ms. Reynolds is an indispensable and necessary party, and this litigation must be dismissed because she has not been joined.

Mr. Wisen adopts Mr. Rollyson's arguments. He further contends that the Plaintiffs had notice of the tax sale, satisfying their due process rights.

West Virginia Code Section 11A-3-1 *et. seq.* sets forth the procedures involved in the notification, sale, and redemption of properties with delinquent taxes. In short, notice is published in a local newspaper, and the county sheriff may attempt to sell the property. If a property does not sell in the local sale, and is not redeemed during an eighteen-month period, it may be sold in a second sale conducted by the Commissioner for Delinquent and Non-entered Lands from the state Auditor's office. In this case, Mr. Wisen purchased the Property at the second sale, and the instant dispute concerns the notice to redeem required after that point.

Section 11A-3-52 provides that the purchaser must "[p]repare a list of those to be served with notice to redeem and request the deputy commissioner to prepare and serve the notice" within forty-five (45) days after approval of the sale. W.Va. Code § 11A-3-52(a)(1). For Class II properties, including the property at issue here, the purchaser must also "provide the deputy commissioner with the actual mailing address of the property." *Id.* at § 11A-3-52(a)(2). The statute prescribes a format for the required notice, and directs the deputy commissioner to prepare the notice and "cause it to be served upon all persons on the list generated by the purchaser" "in the manner provided for serving process commencing a civil action or by certified mail, return receipt requested." *Id.* at § 11A-3-55. In addition, notice addressed to "Occupant" must be mailed, by first class mail, to the physical mailing address for the property or, if not deliverable to the physical location of the property, to "any other mailing address that exists to which the notice would be delivered to an occupant of the subject property" for Class II properties. *Id.*

In 2006, the United States Supreme Court held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Jones v. Flowers*, 547 U.S. 220, 225 (2006). Although actual notice is not required, "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id* at 226 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). In *Jones*, as in the instant case, the property owner learned of the tax sale when a notice was posted on the door to the home after the new owner obtained a deed. The Court did not prescribe a formula for providing notice, but suggested sending notice by both certified and regular mail, posting notice on the property, and sending notice addressed to "occupant." *Id.* at 234-35.

The West Virginia Supreme Court of Appeals has likewise concluded that "certified mail envelopes returned 'not deliverable as addressed' or 'unclaimed' constituted insufficient notice to the [property owners] of the right to redeem the property from the tax sale." *Mason v. Smith*, 760 S.E.2d 487, 494 (W. Va. 2014). The Fourth Circuit similarly held that "[w]hen a party required to give notice *knows* that a mailed notice has, for some reason, failed to inform a person holding a property interest of the impending deprivation, the notice does not pass constitutional muster." *Plemons v. Gale*, 396 F.3d 569, 573 (4th Cir. 2005). Moreover, both the Fourth Circuit and the United States Supreme Court have emphasized that "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation," rejecting any argument that the taxpayer's own negligence in failing to pay taxes, ignoring earlier tax notices, or failing to update his or her address negates the right to receive constitutionally sufficient notice. *Id.* at 574; *Jones*,

9

547 U.S. at 232 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983)). Applying the West Virginia statutory scheme, the Fourth Circuit held that "reasonable diligence required [the tax purchaser] to search all publicly available county records once the prompt return of the mailings made clear that its initial examination of the title…had not netted the [owners'] correct address." *Plemons*, 396 F.3d at 578 (but concluding that summary judgment was inappropriate, because the record did not reveal whether such a search would have produced an address.)

There is little factual dispute between the parties in this case. As an initial matter, the unwritten agreement between Jeffrey and Sherrie O'Neal, the undisputed record owners of the Property, and their daughter, Jennifer Reynolds, does not alter the notice requirements. The Plaintiffs' plan to transfer legal ownership to their daughter does not negate their right to due process before being deprived of the Property. Although Ms. Reynolds, as the resident and anticipated owner of the Property, will be impacted by the outcome of this litigation, she is not an indispensable party. The Court previously denied Mr. Rollyson's motion to file a third-party complaint against Ms. Reynolds, finding that "[t]he O'Neal's arrangement with their daughter may be relevant as to any notices sent or received, but it is not relevant with respect to the Defendant's obligations, constitutional and statutory, to provide adequate notice and opportunity to redeem prior to transferring ownership of the party." (Order, Document 46.)

Mr. Rollyson argues (a) that the duty to provide notice rests exclusively with the purchaser and (b) that he is entitled to qualified immunity.² Qualified immunity is an affirmative defense

---

2 Mr. Rollyson also argues that the due process claim cannot proceed against him in his official capacity. The Plaintiffs clarified that they sought only injunctive relief against Mr. Rollyson in his official capacity, and do not appear to seek summary judgment with respect to the injunctive relief aspects of Count One. The parties have not fully briefed the availability or scope of potential injunctive relief, and so the Court declines the opportunity to address

intended to shield public officials from civil suits arising out of their performance of job-related duties. *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.) The defense of qualified immunity is available unless the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff…." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal emphases omitted). Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231–32. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted). Courts are advised to "ask first whether a constitutional violation occurred and second whether the right violated was clearly established."[3] *Id.*

Under West Virginia law, the purchaser of a tax-delinquent property is responsible for conducting the title search and obtaining the names and addresses to which notice should be sent. Mr. Rollyson, however, is responsible for serving the notice, and, ultimately, approving the tax deed. Because Mr. Rollyson sent the notices, by certified and regular mail, to the Skelton post

---

the issue.
3 "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Smith v. Ray*, 781 F.3d 95, 106, fn 3 (4th Cir. 2015) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

office box, he received those notices when they were returned to the sender. It is not clear from the record whether Mr. Rollyson informed Mr. Wisen that the notices had been returned to the sender. In addition, no notice addressed to "occupant" was sent to either the street address of the Property or to the Skelton post office box. The statute requires the purchaser to supply the address, but directs the deputy commissioner to send a copy of the notice, by first class mail, to "Occupant," at either the physical mailing address or any other mailing address to which notice would be delivered to an occupant of the property. W. Va. Code § 11A-3-55. Further, Mr. Rollyson provided Mr. Wisen with a deed despite his knowledge that the attempts at notice were unsuccessful. Thus, Mr. Rollyson has not demonstrated, as a matter of law, that his actions complied with due process.

The case law surrounding provision of notice of a tax sale and/or the right to redeem a property was well-established at all relevant times. In 2006, the United States Supreme Court made clear in *Jones v. Flowers* that additional reasonable steps, if available, must be taken when an actor is aware that notice has failed. The Fourth Circuit and the West Virginia Supreme Court issued similar holdings prior to the transfer of the Property in this case. That West Virginia places the responsibility to identify the property owners with the purchaser does not absolve Mr. Rollyson or his office of any due process obligations when he is aware that notice has failed. In short, purchasers bear the burden of the additional efforts required to notify property owners of their right to redeem, but granting a deed with the knowledge that notice failed and no additional reasonable efforts were attempted is itself a due process violation.[4] Therefore, the Court finds that Mr. Rollyson is not entitled to summary judgment.

---

4 Mr. Rollyson argues that his role is merely ministerial, and the actions of his office are prescribed by statute. The Court does not find that the statute requires Mr. Rollyson to issue deeds following inadequate notice. Indeed, the

Mr. Wisen is likewise not entitled to summary judgment. It is undisputed that he did not direct a notice to the "occupant" of the Property and took no additional measures to provide notice when the initial mailings were returned (although it is unclear when he learned of the returned notices). He argues that the O'Neals did have notice. However, notice of a tax delinquency or of taxes due does not substitute for notice of the right to redeem following a tax sale, and the lack of diligence of the property owner does not justify a lack of notice by the purchaser. As Judge Irene Keeley noted in a similar case in the Northern District of West Virginia, "[p]erhaps the simplest, most efficient, and most direct way of providing notice…would have been to do exactly what [the purchaser] did once it had acquired the deed to the property—go to the property and knock on the door (or post notice)." *Kelber, LLC v. WVT, LLC*, 213 F. Supp. 3d 789, 804 (N.D.W. Va. 2016). Mr. Wisen made contact with the O'Neals without great difficulty by posting an eviction notice on the door of the property. He could have effectively provided notice *before* depriving the O'Neals of their property by taking the same or similar steps. Therefore, Mr. Wisen has not met his burden of demonstrating that he undertook additional reasonable efforts to provide notice after learning that the initial mailed notices were returned, and summary judgment should be denied.

The Plaintiffs seek summary judgment as to their due process claims under 42 U.S.C. § 1983. They have produced evidence that the notices sent to the Skelton post office box by certified and regular mail were returned to the sender, and no additional attempts at notice were made. They have also produced evidence that additional steps to provide notice were reasonably

---

suggestion that state law requires Mr. Rollyson to give deeds to purchasers who have not fulfilled their statutory and constitutional duty to properly identify and seek to notify owners, borders on the absurd. Although the statute does not specify that additional reasonable attempts to locate and notify property owners are required when an initial attempt fails, it cannot reasonably be read to preclude such a requirement, particularly in light of the precedent.

available. As in *Kelber*, posting notice at the property proved effective after the transfer of the deed, and would very likely have been effective prior to depriving the O'Neals of their property rights. In addition, both Plaintiffs received personal property or other tax notices at updated addresses, which could have been located with a search of public records. Neither Mr. Rollyson nor Mr. Wisen has produced any direct evidence to show that (a) no reasonable additional steps were available, or (b) that they made any attempt to provide notice after the initial mailings were returned. Further, neither has produced any evidence on this issue from which a reasonable inference could be drawn in their favor. Mr. Rollyson and Mr. Wisen proceeded as if the extensive case law requiring additional efforts to provide notice did not exist. The Court finds that no dispute as to any material fact exists, and the Defendants deprived the Plaintiffs of their property without due process. Therefore, the Plaintiffs are entitled to partial summary judgment as to Count One.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Plaintiffs' Motion for Partial Summary Judgment Upon Plaintiffs' First Claim for Relief* (Document 32) be **GRANTED**.

The Court further **ORDERS** that *Defendant G. Russell Rollyson, Jr.'s Motion for Summary Judgment* (Document 35) and *Defendant Richard Wisen's Motion for Summary Judgment* (Document 39) be **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: August 1, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA